## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

   v.                                            **Case No. 07-CR-242**

**MARCELLO JACKSON**
        **Defendant.**

### SENTENCING MEMORANDUM

On three occasions in early 2007, defendant Marcello Jackson sold one ounce of crack cocaine to a confidential informant ("CI") working for the government. The government subsequently indicted him on three counts of crack distribution, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(B), and he pleaded guilty to one of those counts.

In imposing sentence, the district court must first calculate the advisory sentencing guideline range, then determine the appropriate sentence under 18 U.S.C. § 3553(a). See Gall v. United States, 128 S. Ct. 586, 596 (2007); United States v. Holt, 486 F.3d 997, 1004 (7th Cir. 2007). In this case, without objection I adopted the guideline calculations in the pre-sentence report: offense level 27 and criminal history category III, producing an imprisonment range of 87-108 months. I then considered the sentencing factors under § 3553(a) and imposed a sentence of 60 months, the statutory mandatory minimum. Written reasons follow. See 18 U.S.C. § 3553(c).

**I.**

The district court must in sentencing a defendant consider all of the factors set forth in § 3553(a). United States v. Harris, 490 F.3d 589, 593 (7th Cir. 2007), cert. denied, 128 S. Ct.

963 (2008). Those factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After considering these factors, the district court must select a sentence that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing, which are (A) just punishment, (B) deterrence, (C) protection of the public and (D) rehabilitation of the defendant. § 3553(a)(2). This statutory command is generally known as the "parsimony provision," and it requires the district court to impose the least severe sanction necessary to achieve the four purposes of sentencing listed above. United States v. Santoya, 493 F. Supp. 2d 1075, 1077 (E.D. Wis. 2007); see also Kimbrough v. United States, 128 S. Ct. 558, 570 (2007) (characterizing the parsimony provision as the "overarching provision" of the statute); United

2

States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006) (stating that the parsimony provision serves as "the guidepost for sentencing decisions post-Booker").

While the district court must "give respectful consideration to the Guidelines" in determining a sufficient sentence, Kimbrough, 128 S. Ct. at 570, the court may not presume that the guideline sentence is the correct one, Rita v. United States, 127 S. Ct. 2456, 2465 (2007). Nor is the district court necessarily bound by the "policy" determinations embedded in the guidelines (including the guidelines' disparate treatment of crack versus powder cocaine). See Kimbrough, 128 S. Ct. at 575. Rather, as the Seventh Circuit has stressed, after accurately calculating the advisory range so that it "can derive whatever insight the guidelines have to offer," the district court "must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." United States v. Sachsenmaier, 491 F.3d 680, 685 (7th Cir. 2007); see also United States v. Schmitt, 495 F.3d 860, 865 (7th Cir. 2007) (reversing where the district court failed to treat the guidelines as merely advisory).

**II.**

**A.**

On three separate occasions in March, April and May 2007, a CI purchased about one ounce of crack cocaine from defendant in a controlled buy. The total amount involved in the three transactions was 80.68 grams, and the government forwarded $2450 in buy money to complete them. The record contained no evidence of violence, threats or weapon possession associated with any of the deals. Defendant claimed that he became involved in dealing in order to feed his own habit, not for financial gain. However, as the government indicated at sentencing, his conduct during the transactions revealed that he was no stranger to drug

3

dealing; in fact, on one occasion he upped the price at the last minute due to a so-called "dope drought."

**B.**

Defendant compiled a fairly lengthy record in his thirty-seven years, with convictions for theft in 1991, possession of cocaine twice in 1996, theft again in 1998, resisting/obstructing in 2003, disorderly conduct in 2004, and possession of marijuana – 2d offense in 2005. He was on probation for the final offense when he committed the instant crimes, but nevertheless discharged from probation in May 2007. Although his record contained a fair number of convictions, most were relatively minor and indicative of someone with a drug problem, and defendant admitted daily use of marijuana and crack prior to his arrest in this case.

However, to defendant's credit, he submitted negative drug screens (following some initial residual positives), participated in counseling and otherwise complied with his conditions of pre-trial release in this case. He worked as a self-employed carpet cleaner since September 2006, a positive development given his limited employment record previously. Defendant dropped out of school and had not obtained his GED, something he had to work on. He was also the father of six children and owed over $76,000 in back child support, an issue he also had to address. According to his current girlfriend, he was involved in his children's lives, though.

**C.**

The guidelines called for a term of 87-108 months in this case. However, that range was based on the guidelines' disparate treatment of crack versus powder cocaine, which the Sentencing Commission has consistently criticized as producing disproportionately harsh

4

sanctions. See, e.g., Kimbrough, 128 S. Ct. at 568; see also United States v. Smith, 359 F. Supp. 2d 771, 777-81 (E.D. Wis. 2005) (discussing the serious flaws in the 100:1 crack to powder cocaine ratio). Although the Commission recently reduced crack sentences by about 2 levels, this was only a "partial remedy," as the guidelines still call for sentences for crack offenses up to five times longer than sentences for equal amounts of powder. Kimbrough, 128 S. Ct. at 569. In the present case for instance, had defendant possessed powder cocaine his base offense level would have been 16 rather than 30, and his range 18-24 rather than 87-108 months. See U.S.S.G. § 2D1.1(c). The Supreme Court has held that, given this unjustified disparity, the district court may under Booker's advisory guideline regime conclude when sentencing a particular defendant that the crack/powder ratio "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." Kimbrough, 128 S. Ct. at 575. I found the guidelines' recommendation greater than necessary to achieve just punishment in this case. See 18 U.S.C. § 3553(a)(2)(A).

Although after Kimbrough it is no longer necessary to "refract" the Commission's criticism of the crack/powder disparity through an individual defendant's case, see United States v. Jointer, 457 F.3d 682, 688 (7th Cir. 2006), I did note that defendant Jackson appeared to be a low level street dealer (if not a novice). He was not the type of person Congress likely had in mind when it set the high penalties for crack cases. Nor did the record contain any suggestion of violence, weapon possession or other harmful secondary effects on the community associated with his crime, the horribles Congress believed to be associated with crack dealing when it initially adopted the 100:1 ratio. See United States v. Willis, 479 F. Supp. 2d 927, 934-36 (E.D. Wis. 2007). Therefore, I found that the crack guideline produced a sentence greater than necessary in this case.

5

Of course, just because a court possesses the discretion to vary from the crack guideline does not require it to do so. There may well be cases where the purposes of sentencing will require a more substantial penalty. In this case, though, I saw no need to protect the public for the period of time recommended by the guidelines. Defendant's prior convictions were suggestive of an addict, with possession offenses and other petty criminality often associated with addiction. Defendant no doubt had a drug problem, but he was not violent and with treatment could succeed in the community. His recent employment and abstinence demonstrated as much. Therefore, I concluded that a below-guideline sentence would be sufficient to protect the public. See 18 U.S.C. § 3553(a)(2)(C).

I also noted that defendant had never been to prison before – his prior sentences were all county jail terms – so I saw no need for lengthy prison to deter him from re-offending. Even at the mandatory minimum defendant faced far more time than he had ever done before. Certainly, five years in prison was sufficient to deter him and others. See 18 U.S.C. § 3553(a)(2)(B).

**III.**

Under all of the circumstances, I found a sentence of 60 months, the minimum required by statute, sufficient but not greater than necessary. Therefore, I committed defendant to the custody of the Bureau of Prisons for 60 months, with a recommendation that he participate in any substance abuse treatment programs available, including the 500 hour program. I further ordered him to serve five years of supervised release. I selected a supervision term above the minimum required by statute to ensure that he received treatment, remained employed and supported his children. I included as specific conditions a drug after-care program and repayment of the buy money expended in this case. Other terms and conditions of supervision

6

appear in the judgment.

Dated at Milwaukee, Wisconsin, this 7th day of March, 2008.

/s Lynn Adelman

_____
LYNN ADELMAN
District Judge